Martin v. State.

---

GEORGE HAMLEY MARTIN V. STATE OF NEBRASKA.

FILED JULY 1, 1925.   No. 24479.

1. **Criminal Law: VERDICT: CONFLICT OF EVIDENCE.** Unless the evidence is wholly insufficient to sustain the verdict, unless it be such that the jury should not be permitted to speculate upon its effect, the finding of the jury upon conflicting evidence will not be disturbed by this court, except for error of law occurring upon trial.

2. ———: REFUSAL OF INSTRUCTION. It is not error to refuse an instruction where the proposition of law therein contained is substantially covered in an instruction given by the court on its own motion.

ERROR to the district court for Sheridan county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

*Roscoe L. Wilhite* and *Allen G. Fisher*, for plaintiff in error.

*O. S. Spillman, Attorney General, Harry Silverman* and *D. F. Osgood, contra.*

Heard before MORRISSEY, C. J., THOMPSON and GOOD, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

This is a case in which the defendant, George Hamley Martin, brings proceedings in error to reverse a judgment of conviction for cattle stealing in Sheridan county.

On the 1st of February, 1923, he butchered a red brockle-faced heifer bearing the brand C-A on her left side, and took the meat to Bingham. So far the identity of the animal was well established. Its hide was found and fitted the skull and bones, bullet mark and all, with such nicety as to remove any question, when supplemented by the testimony of Lineback who assisted in the skinning.

But from here on the evidence is sharply conflicting. Monahan, a ranchman close by, testified that he owned the brand C-A and that the heifer was his, a long haired, breachy, fence-crawling four-year old which he could positively identify by its brand, its conformation and its characteristics. Martin, on the contrary, stoutly swore that the heifer was his; that it had been dropped by his shield-brand cow in April, 1920, and had been in his uninterrupted possession since the fall of that year when it was returned to him from another range. Certain of the Adams ranch riders corroborated him to this extent: They testified that when they moved their cows and calves in the spring they unwittingly took along his shield-brand cow, followed by a red brockle-faced heifer calf, and that they advised him of the fact upon their return, and duly drove the animals back in the fall.

There were circumstances to aid both the defense and the prosecution. Martin openly disposed of the major portion of the meat in the little town of Bingham, where he was living with his wife and family, making no secret of the fact that he was going to butcher, proffering inspection of the hide as he delivered a quarter of the beef to the storekeeper, and then hanging the hide over a two-by-four in plain sight in his barn. But shortly following, though after a complaint had been filed against him, he vanished and was for about nine months in Missouri, Wyoming, Kansas, and other places, looking for a location, as he testified.

There was much testimony as to the age of the slaughtered animal. Monahan stated that it was coming four, having been born in the spring of 1919. The hide, the skull and the legs were before the jury. Dr. Snyder, a veterinarian, testified rather positively from his examination of the teeth that the heifer was past two and a half, and coming three years old. Perhaps he faltered slightly on the point that it might be a little over or a little under three, it being difficult to tell with absoluteness. But mainly he was positive enough that the teeth showed a cow animal not more than three years old. Monahan qualified and said that the mouth of the heifer showed that she was coming four. It seems that in the cattle country owners and ranchmen generally are able to tell the age of a cow by the mouth. The court is furnished with the jaw in question, and also with plates and an excerpt from Huidekoper on the age of domestic animals.

The record has received careful examination. It is entirely possible that the defendant had a red heifer coming three and that this was the beef that he butchered. Contrariwise, it is entirely possible, and probable too, that the red heifer that he butchered was a brockle-face coming four, and that it belonged to Monahan. It is possible that, while the heifer was Monahan's, Martin made a mistake and thought it was his. Again he might have lifted the cow in Grant county and mixed it with his bunch when he took the same to the Lineback place to winter; and he might have found the breachy red brockle-face ranging in Sheridan county, and slipped her into his herd on the way to Lineback's, or thereafter.

From what has been said it is clear that the case was for the jury upon ample evidence to sustain a conviction, though it must be admitted that it is a case in which reasonable minds, even if trained in the law and in the determination of questions of fact, might differ upon the question of reasonable doubt involved.

But may we on that account set aside the verdict of the jury which the law invests with the function of finding the

facts? By no means, unless we find that there was prejudicial error in the information, in the reception of the evidence, in the conduct of the trial, or in the instructions of the trial court. Unless the evidence is wholly insufficient to sustain the verdict, unless it be such that the jury should not be permitted to speculate upon its effect, the finding of the jury upon conflicting evidence will not be disturbed by this court, except for error of law occurring upon trial. The instruction upon reasonable doubt was quite beyond reproach.

We turn, then, to the record and to the errors assigned and presented in defendant's brief. It is first said that there was no competent proof that Monahan's brand was recorded. Monahan testified that it was. A drawing of the brand was offered and received in evidence without objection. And while he did not produce a certified copy of the record, as he expected to do, no motion was made to strike his evidence on that account. The proof was sufficient under a proper construction of the statute and the objection is not well taken. *Rema v. State*, 52 Neb. 375.

Undisputed proof, according to the language of the assignment, indicates that the heifer was born in 1920 rather than 1919. But to this we cannot agree. The fact is very much in dispute, as evidenced by the testimony of the prosecuting witness Monahan, who swore as to the age from the appearance of the teeth, and qualified in so doing. We quote the following from the experience of the prosecutor, and from his brief, not as an impeachment of science, but as containing the grain of caution which seekers after truth are constrained to use in dealing with the testimony of the expert: "I have had altogether about 17 years experience as a prosecutor, and I well remember when I was district attorney of the first district we had a case of poisoning. In the trial of the case of State v. Morris, where the charge was poisoning, we called for the state a number of doctors who testified positively that the symptoms were those of strychnine poisoning, and the defense called just as many doctors who gave just the opposite opinion, so that ex-

perience would lead me to believe that a man's experience of a great number of years would be just as reliable as the testimony of a horse doctor." The conclusion of the attorney goes much too far, but the common knowledge of stockmen makes them fully aware that a comparatively slight circumstance, such as trauma, disease or character of feed, may make a change in the mouth of a cow or horse sufficient to mislead even a capable examiner. Exceptions are undoubtedly many. It is most difficult to be sure when it comes to months, even in normal cases. In the judgment of the court the exhibit does not show the incisive arch as it was when the heifer was alive.

From what has been said in the foregoing pages it is obvious that the trial was not without evidence tending to show a felonious intent. The testimony of Monahan and the circumstances of the matter are such as to raise a question for the jury, and the court was not in error in giving its instruction No. 3, defining the crime.

It is assigned in the fourth objection of the defendant that the court erred in giving its, instruction No. 7 upon circumstantial evidence. In the opinion of the court the case bristled with circumstantial evidence, as may be gathered from the foregoing. The instruction was not only good as a statement of the law, but it was eminently proper that it should be given.

Objection is made in assignment of error No. 5 that the court erred in its definition of criminal intent. We find no error in the instruction on this phase of the case. It contains all of the essential elements of a correct instruction, not forgetting the substance of what was tendered by defendant and refused by the court. If it had included the concluding phrase of the instruction tendered, it would have been open to objection on the part of the state, as making the matter of reasonable doubt so prominent by repetition that it would tend to mislead the jury. It is not error to refuse an instruction where the proposition of law therein contained is substantially covered in an instruction given by the court on its own motion.

Instruction No. 10 deals with the matter of flight. The trial court was particularly careful to guard the defendant from any improper testimony on the part of sheriff Bruce, striking out the only objectionable statement therein and directing the jury not to consider it. Under the evidence that the defendant left as he did, and that his wife in his absence rented a place in the vicinity of Litchfield, a hundred miles distant, and moved the household and the stock, and that the sheriff was unable to find the defendant, though searching for him, instruction No. 10, being a correct exposition of the law upon the subject, was properly given.

Complaint was made upon argument that the trial judge reexamined the witness Monahan upon a certain point and would not permit cross-examination by counsel for the defendant. The most casual scrutiny of the record in this connection satisfies the court that the testimony thus elicited was not less favorable to the defendant than to the state, also that the point had been well covered by the cross-examination of the defendant theretofore, and finally that defendant made no objection in the record, and neither asked for leave to cross-examine nor moved that the testimony be stricken out.

Much was said upon oral argument to the effect that the trial court expressed itself as of certain opinion, which, being entertained by it, should have led it to direct a verdict for the defendant or to grant him a new trial. In the absence of a record upon the point, this court cannot well consider it.

The record, we think, is free from prejudicial error. The defendant had a fair trial. In the opinion of a majority of the court the finding of the jury was a correct one. The judgment of the court is therefore

AFFIRMED.